*421 OPINION OF THE COURT
Peter Tom, J.
The novel issue raised by this motion is whether a majority shareholder of a loft building or an interim multiple dwelling, whose shares of stock represent primarily commercial space, has an obligation to pay her proportionate share to legalize the building pursuant to article 7-C of the Multiple Dwelling Law.
In the mid-1970’s, the individual parties in this action, through 126 Chambers Street Corp. (the Corporation) purchased a five-story building located at 126 Chambers Street (the Building) in Manhattan. The Corporation issued 200 shares of stock in which 112 shares were allocated to the first floor and basement as commercial space and 22 shares were allocated to each of the remaining four floors of the Building used as residential space.
The decedent, Sol Schwimmer, purchased 134 shares of the Corporation stock, which represent the commercial space presently used to operate a restaurant, and the second floor residential unit presently leased to a tenant. The shares of stock owned by Sol Schwimmer, who died in 1988, were transferred to his wife, defendant Roslyn Schwimmer (Schwimmer).
Plaintiffs are the owners and occupants of the third, fourth and fifth floor residential units.
In summary, defendant Schwimmer owns 67% of the outstanding shares of the Corporation, while plaintiffs collectively own 33% of the shares.
It is undisputed that the Building is an interim multiple dwelling by reason that there are more than three floors or units of the Building used for residential purposes without a residential certificate of occupancy. (Multiple Dwelling Law § 281 [1].) While the Corporation never obtained approval by the Attorney-General of the State of New York for cooperative conversion in accordance with the General Business Law, the shareholders occupied and maintained the subject premises throughout the years as a de facto cooperative.
The dispute between the parties arose in 1982 when the Legislature enacted Multiple Dwelling Law article 7-C providing for the legalization of interim multiple dwellings.
Plaintiffs as minority shareholders sought to obtain a residential certificate of occupancy for the premises, and to have *422 each shareholder of the Corporation pay his or her proportionate share of the conversion costs based on ownership of stock of the Corporation.
Defendant refused to be held responsible for a majority portion of the conversion costs on the rationale that since legalization would only benefit the residential premises, the residential occupants should be obligated to pay all expenditures associated with the conversion.
In the complaint plaintiffs seek, inter alla, a declaratory judgment directing the Corporation to legalize the Building pursuant to Multiple Dwelling Law article 7-C and defendant Schwimmer to pay 67% of the costs of legalization.
Plaintiffs urge that there was an agreement among all shareholders of the Corporation, including decedent, in which the shareholders jointly agreed to obtain a residential certificate of occupancy for the Building and that each shareholder would pay for his or her proportionate share of expenses for legalization. Plaintiffs contend that Schwimmer breached the agreement.
In the instant motion, defendant moves to dismiss the complaint on the ground that plaintiffs have no merit to their claims and that there are no triable issues of fact.
The Loft Law (Multiple Dwelling Law art 7-C, as added by L 1982, ch 349) was enacted in June 1982 to address a serious emergency condition caused by the illegal conversions of commercial and manufacturing lofts into residential premises without compliance with residential building codes and laws, thereby jeopardizing the health, safety and welfare of many city dwellers. The Legislature recognized that due to an acute shortage of available housing stock it would create a hardship if loft dwellers were forced to relocate, and that loft tenants should not be deprived of the improvements made to convert the premises, and therefore a framework to legalize loft premises into residential dwellings should be promulgated. (Multiple Dwelling Law § 280.)
The Loft Law was enacted to regulate the legalization of loft premises into residential dwellings in conjunction with the local zoning resolution, and to provide for the rights and obligations of residential loft occupants and loft owners (Multiple Dwelling Law § 280 et seq.).
The effective date of the Loft Law which was initially scheduled to expire in June 1992 has been extended to June 30, 1996. (L 1992, ch 227, § 4.)
*423 A court of competent jurisdiction has concurrent jurisdiction with the Loft Board to hear issues with respect to the Loft Law and to enforce its rules and regulations for legalization. (See, County Dollar Corp. v Douglas, 160 AD2d 537; Multiple Dwelling Law § 284 [1] [v].)
Defendant argues in this motion that since the by-laws of the Corporation require 75% stock vote to pass financial and business resolutions, the minority shareholders cannot pass a budget or resolution for any extraordinary work to be performed without the approval of defendant’s 67% shares of stock. Defendant maintains that without a shareholders’ agreement, she cannot be compelled to vote her shares in any particular fashion. Defendant further argues that her deceased husband did not enter into the agreement as urged by plaintiffs and that even if there was an oral agreement, as alleged, it would be unenforceable under the Statute of Frauds and proof thereof would be barred by the Dead Man’s Statute.
The determination as to whether there was an agreement between the parties pertaining to the shareholders’ respective obligation for conversion costs is not necessary to dispose the issues raised in this motion.
Defendant’s argument fails upon the basic principle that corporations which are formed for legitimate purposes cannot through shareholders’ action or inaction circumvent statutory mandates nor defeat equitable policies.
Parties may form corporations for any legitimate purpose but incorporations are subject to " 'tests of honesty and justice’ ” and the corporate entity will be disregarded if there is a deviation of the legitimate privilege to do business in the corporate form (Matter of Guptill Holding Corp. v State of New York, 33 AD2d 362, 365).
As a general rule, stockholders are not personally liable for corporate obligations or debts, however, a strong equitable consideration will at times pierce the corporate structure where the majority shareholders in control of the corporation are using it to defeat a statute or public policy. (Cone v Acme Mkts., 41 AD2d 409; also see, Bartle v Finkelstein, 19 AD2d 256.)
In the instant case, defendant Schwimmer cannot hold plaintiffs hostage and use her majority shares of stock to defeat the right of the minority shareholders to seek protection of a remedial statute, and prevent corporate compliance with the Loft Law.
*424 Schwimmer’s action, if permitted, would frustrate and defeat the stated purpose of the Legislature and continue the illegal nature of the residential floors jeopardizing the safety and welfare of the residential occupants. This the court will not permit. The shareholders of the Corporation must comply with the clear mandate of the Loft Law.
Further, the actions of plaintiffs to obtain a residential certificate of occupancy for the premises is well within the purpose and powers of the Corporation.
The certificate of incorporation for 126 Chambers Street Corp. expressly provides that its primary purpose is "to provide for [its] shareholders * * * homes or studio apartments * * * as an incident of their shareholding interest * * * to improve, rebuild, manage, and operate any such property or properties * * * to procure the necessary permits or licenses from municipal authorities for the operation of apartment houses and to do and perform every act required by law to be done or performed in the maintenance and operation of any type of apartment house.”
The next issue raised is what portion of the conversion costs the shareholders must bear.
Defendant argues that the conversion of lofts into legal residential units would not affect or benefit the commercial premises. Defendant points out that 112 shares or 56% of the total shares of stock of the Corporation are allocated to the commercial space and that it would be inequitable if defendant is required to pay that portion of the conversion costs which represent her commercial interest.
Multiple Dwelling Law § 284 specifically sets forth the owner’s obligations for the legal conversion of the interim multiple dwelling and provides for the steps and timetable which the owner shall follow for such conversion.
The Corporation, being the owner of the subject interim multiple dwelling, is legally responsible to obtain a residential certificate of occupancy for the premises pursuant to Multiple Dwelling Law § 284. Since the required conversion is a corporate obligation, the shareholders are responsible for all necessary expenses associated with legalization of the loft Building.
In the absence of a shareholders’ agreement, each shareholder must bear the conversion costs in a proportion based on ownership of corporate stock. Defendant must bear her proportionate share of conversion expenditures regardless of how the shares of stock are allocated since the manner in *425 which stocks are designated does not affect or diminish defendant’s proprietary interest in the Corporation. Stock and proprietary lease in a de facto or de jure cooperative constitute ownership in personal rather than real property (State Tax Commn. v Shor, 43 NY2d 151; Brief v 120 Owners Corp., 157 AD2d 515).
The court also rejects defendant’s equitable argument. Contrary to defendant’s assertion, the legal conversion of the lofts will greatly enhance the market value of the subject real property and defendant Schwimmer will receive the benefit of the conversion by 67% of the total increased value of the shares of the Corporation.
As it is within the scope of judicial review on a motion for summary judgment to search the record, to the extent that plaintiffs seek a declaration of shareholders’ rights, the court directs 126 Chambers Street Corporation and its shareholders to effect legalization of the residential premises pursuant to the provisions of Multiple Dwelling Law article 7-C and declares that the costs associated with obtaining a residential certificate of occupancy shall be borne by the shareholders in proportion to the percentage of their stock ownership.
Accordingly, the motion by the defendant for an order dismissing the complaint is denied. That portion of plaintiffs’ second and third causes of action in the complaint asserting that Roslyn Schwimmer and the late Sol Schwimmer breached their fiduciary duty, and dissipated, wasted or otherwise mismanaged monies of the Corporation and for an accounting are hereby severed.